### PHILEMON C. WEDERSTRANDT *v.* JONAS MARSH.

A sheriff's sale will not be annulled at the suit of a creditor of the defendant in execution, unless it be shown that the former has been injured thereby. *Per Curiam:* Though the acts of a debtor be illegal and fraudulent, yet if they cause no damage to any one, they will not be annulled.

The nullity resulting from a failure to advertise a sheriff's sale for the time required by law, is not an absolute one, and does not of itself annul the sale. The advertisements may be waived by the written consent of the parties.

Where a plantation is to be sold under execution, the debtor may require that the sale be made on the place itself. C. P. 665.

Where the vendor and vendee of an immovable reside in the same house possession follows title.

APPEAL from the District Court of St. Martin, *King,* J.

GARLAND, J. The plaintiff sues Marsh, on his promissory note, for $400, and interest. The petition is in the usual form, with an averment that the note was given to secure the price of a sugar mill, sold by plaintiff to defendant. After a prayer for judgment, the petitioner asks that his privilege as vendor may

be recognised, and the mill be sold to pay his demand. The answer of the defendant is a general denial.

Martha M. Taylor intervened in the suit, alleging that she was the owner of the sugar mill, upon which the privilege is claimed, she having purchased it, with other property, seized under writs of execution issued in favor of Kohn, Daran & Co. against Jonas Marsh and others, of Martha M. Taylor, tutrix &c. against Jonas Marsh, and John Devalcourt and others, against Jonas Marsh, being suits Nos. 2945, 3484, 3485, in the District Court of the parish of St. Martin, from the returns on which writs it will appear, that she purchased the plantation and various other property of the defendant, among which is the sugar mill in question. Wherefore she prays to intervene in the case, and oppose the claim for a privilege set up by the plaintiff. The answer of the latter is, a general denial of the allegations in the intervention, and a prayer for its dismissal, with general relief.

The evidence introduced on the trial was the note and protest, and proof of the signature of the defendant. A witness for the plaintiff testified, that the sugar mill formed the consideration of the note, and that it was on the plantation on which defendant resided ever since the date of its delivery, down to the time of trial. That Marsh has repeatedly expressed his willingness to pay one half the note, and that the mill was the consideration of it. This acknowledgment was made within twelve months previous to citation. Witness was the agent between plaintiff and defendant, in the purchase of the mill, and Miller was no party to the transaction, although defendant always contended that he was bound for one half. The intervenor has repeatedly heard witness and Marsh holding conversations in relation to the mill, and the payment of the price, within twelve months. The mill originally cost $1,500, and was a good one when sold to defendant. It was admitted that the intervenor is the daughter of the defendant, and lives with him. The witness cannot recollect at what particular place he held his conversations with defendant; but he knows that repeated conversations were held, and that the intervenor was present.

In behalf of the intervenor, her execution, as tutrix, &c., against the defendant, was offered in evidence, in the return on

which the sheriff details his proceedings, and the application of the proceeds of the sale made by him to it and other executions in his hands. The validity and existence of the judgments have not been denied in the argument, nor any question raised as to their correctness. The sheriff returns that he received the execution on the 24th of January, 1844, and, on the 30th of the same month, seized all the right, title, and interest of the defendant in and to certain property, which he proceeds to describe, being four tracts of land, containing different quantities, also eleven slaves, seven of whom are fifty years of age and upwards, and all the others, except one, thirty-five years and upwards. Besides these, a quantity of plantation utensils and stock were seized. The sheriff left a notice of seizure with each plaintiff, and with the defendant, notifying each of them of the seizure and day of sale, and requesting them to name an appraiser. On the day of seizure, the plaintiffs in the executions, and Marsh, the defendant, agreed that the property should be sold, on the second Saturday of March, 1844, on the plantation of the defendant, waiving all formalities except that of appraisement. The sheriff advertised the sale at three public places in the parish, and on the day proceeded to offer the property for sale, after appraisement. The property was estimated at $8,777 50, by appraisers duly sworn and appointed. A certificate of mortgage was exhibited and read, and the property, being a plantation and slaves, with stock and utensils, it appears, was offered for sale in block. There was no bid to two thirds of the appraisement in cash. The parties had entered into an agreement, in writing, that, in the event of the property not selling for two thirds of the appraisement in cash, the sheriff should at once, without further advertisement or formality, proceed to offer it for sale on a credit of twelve months. The sheriff, in pursuance of this agreement, as soon as it was ascertained that two thirds of the appraisement in cash was not bid at the time and place, proceeded at once to offer the property on twelve months credit, when it was adjudicated to Martha M. Taylor, for $5,550 00. She gave her bond, with security, to Taylor & Devalcourt for $3,407 98, with interest, to satisfy their execution. The sheriff applied $1,792 74, to the discharge

of the execution in favor of Mrs. M. Taylor, as tutrix, &c. ; and for the balance of the sum bid by her, she gave her twelve months bond to the defendant, and the sheriff made her a regular deed, as he states in his return.

The parol evidence shows, that the sale was advertised in the English and French languages, and that, at the time of the sale, and since, Mrs. Taylor was living with the defendant (her father), on the plantation.

On the foregoing facts, the district judge, being, as he says, satisfied that the law and evidence were in favor of the plaintiff, and against the defendant and intervenor, gave a judgment for the former, for the amount of the note, dismissed the petition of intervention, and recognised the privilege of the plaintiff on the sugar mill. From this judgment the defendant and intervenor have appealed.

As to the defendant Marsh, it appears to us that there is no ground of complaint against the judgment rendered against him, and it must be affirmed, with damages ; but as to the judgment against the intervenor, the case is very different.

It is no where alleged in the pleadings, that the sale made by the sheriff is illegal or fraudulent; nor is it alleged, nor proved, that the defendant is insolvent, or unable to pay his debts. It is not intimated even, that Marsh owed any other debts than those in favor of the creditors in the executions and the present plaintiff, and the return of the sheriff shows, that there was a surplus of the proceeds of the sale, nearly equal to the plaintiff's demand. Thus, without any allegation of fraud, collusion, or nullity of any kind, this court is called on to say, that the proceedings of the sheriff are illegal, the acts of M. M. Taylor and her father collusive and fraudulent, the appraisers guilty of fraud and perjury, and a sale made by an officer of the law absolutely null on its face, and all, at the instance of a creditor, who does not allege, nor prove that he has been injured, or is likely to be injured by the proceedings. The defendant has given good security for a suspensive appeal in the sum of $600, and as the judgment must be affirmed as to him, we cannot see how the plaintiff can be injured. This court has repeatedly decided that the acts of a debtor may be illegal and

fraudulent, yet if they cause no damage to any one, they will not be annulled.

The counsel for the appellee contends, that the judgment against the intervenor should be affirmed, because the proceedings under the execution were illegal and informal, and the sale fraudulent and collusive.  It is not denied, that the judgments in favor of Taylor, Devalcourt and the intervenor against Jonas Marsh were valid and legal, and founded upon real debts; nor is any difficulty made as to the legality of the executions.  The seizure appears to us to have been made in the manner required by law.  The sheriff in his return says, and a witness testifies, that the sale was advertised at three public places ; but the counsel urges that the sale was not advertised for the length of time required by law.  It is true, that only twenty seven or twenty eight days elapsed between the posting of the advertisements and the sale, but this defect, in our opinion, is cured by the written consent of the parties to waive the time.  If not cured by the consent of the parties, the nullity resulting from it is not absolute, and does not of itself annul the whole sale.  The cases cited from 1 Robinson 331, and 5 La. 485, are different from the present in this, that it was the defendants in the executions, or their heirs, who claimed to set aside the sales on the ground of illegal advertisements, and of there being, consequently, no divestment of title, as no consent was given.  As to the sale being fraudulent and collusive, we have before said there is no allegation or proof of either , and we do not think it can be inferred from the waiver of a few days in the time for advertising.

It is further objected in the points filed, that there was no legal and proper appraisement of the property, it being falsely and fraudulently appraised at not more than one third of its value ; that some articles were not appraised at all, and the sugar mill in question was only appraised at ten dollars. There is no evidence in the record to sustain this serious impeachment of the integrity of the appraisers.  They appear to have been sworn according to law, and legally chosen.  There is no evidence that they are dishonest men, nor that the property was worth more than the value they placed on it.  What

articles were not appraised the counsel has not taken the trouble to designate, nor has he shown the sugar mill was worth more than the appraisement. The plaintiff sold it to the defendant nearly two years before the appraisement, and it had then been used a considerable time. We see nothing on the face of the appraisement that is illegal, and the plaintiff has offered no evidence to prove that it was so. It may be true that the property was appraised and sold for less than its value, but we see no proof of it. A witness states that the day of the sale was a rainy and boisterous one, and that there was no person present but the sheriff, the parties and the appraisers. The defendant required the sheriff to make the sale at his place of residence, which he unquestionably had a right to do. Code of Practice, art. 665. The parties could not foresee that the day would be unfavorable, and that people would not attend to bid for the property. It appears that the appraisement was so high, that no bid, in cash, to the amount of two-thirds of it, could be obtained, and, consequently, the property had to be offered on a credit of twelve months.

As to the sale made at twelve months' credit, without further advertisement, it is not impeached by the plaintiff in his answer, nor even in the points filed by his counsel in this court; and no damage appears to have resulted from it to the plaintiff; it is, therefore, unnecessary to notice it further.

It is said that the defendant has remained in possession of the mill ever since its delivery, and has never parted with the legal possession of the property. It is sufficient to say, in reply to this objection, that the defendant and intervenor resided in the same house, and, that being so, the possession follows the title.

It is ordered and decreed that the judgment of the District Court, so far as it relates to James Marsh, be affirmed, with costs, and ten per cent damages, for a frivolous a appeal; but so far as it relates to the intervenor, Martha M. Taylor, it is ordered and decreed that the judgment be annulled and reversed, and that the opposition of Martha M. Taylor to the privilege claimed by the plaintiff on the sugar mill mentioned, be sustained, and his claim rejected; he paying the costs of the intervention in both courts.

*Nicholls,* for the plaintiff.

*Magill,* for the defendant and intervenor, appellants.